**In the Matter of N. C. TRADING, a division of Minemet Metals, Inc.**

**Appeal No. 78–10.**

United States Court of Customs and Patent Appeals.

Oct. 26, 1978.

David Busby, James Taylor, Jr., Busby & Rehm, Washington, D. C., attorneys of record, for appellant.

Frederick L. Ikenson, Stewart & Ikenson, Washington, D. C., attorney of record, for appellees.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and FORD,* Judge.

MILLER, Judge.

This appeal is from the order of the United States Customs Court denying a motion by N. C. Trading Company, Inc.[1] ("N. C. Trading") to intervene in *Airco, Inc. v. United States,* Customs Court No. 76–3–00643. We affirm.

### Background

Airco, Inc. ("Airco"), an American manufacturer of ferrochrome, brought suit in the Customs Court under section 516(d) of the Tariff Act of 1930, as amended, (19 U.S.C. § 1516(d)),[2] challenging a determination by

---

\* The Honorable Morgan Ford of the United States Customs Court, sitting by designation.

1. On August 30, 1978, during the pendency of this appeal, N. C. Trading Company, Inc. was merged into Minemet Metals, Inc., a corporation formed under the laws of the State of New York, with all business now being conducted by N. C. Trading, a Division of Minemet Metals, Inc.

2. 19 U.S.C. § 1516(d) reads:

**Contest of Secretary's determination that foreign merchandise is not being sold in United States at less than fair value or that bounty or grant is not being paid**

(d) Within 30 days after a determination by the Secretary—

(1) under section 160 of this title, that a class or kind of foreign merchandise is not

the Secretary of the Treasury ("Secretary") that bounties or grants are not being bestowed on ferrochrome imported from the Republic of South Africa within the meaning of Section 303 of the Tariff Act of 1930, as amended, (19 U.S.C. § 1303).

In its motion to intervene in the Customs Court, N. C. Trading argued that (1) as an importer-consignee of merchandise involved in a section 516(d) proceeding, it has a statutory right under section 516(f) of the Tariff Act of 1930, as amended, (19 U.S.C. § 1516(f)),[3] to intervene because actions under section 516 have been three-party actions since 1922 and, in enacting the Trade Act of 1974,[4] Congress did nothing to change this; (2) the failure of the Customs Court to allow it to participate would raise serious constitutional questions because of its direct and substantial interest in the proceedings, which interest is not adequately represented by the existing parties; and (3) the Customs Court should look to Fed.R. Civ.P. 24(a) for guidance.

Both Airco and the Government opposed N. C. Trading's motion, arguing that (1) N. C. Trading failed to establish that it was a consignee of ferrochrome from South Africa; (2) the statute does not authorize a consignee of merchandise subject to a proceeding under section 516(d) to appear and be heard as a party in interest; (3) there is no constitutional right to participate; and (4) N. C. Trading failed to meet the criteria set forth in Fed.R.Civ.P. 24(a), which in any event is not applicable to the Customs Court. On December 14, 1977, the Customs Court denied N. C. Trading's motion to intervene without opinion. N. C. Trading filed a motion for rehearing which was denied on February 28, 1978, without opinion.

On April 28, 1978, N. C. Trading filed a notice of appeal with this court and moved for a stay of the proceedings in the Customs Court pending disposition of the appeal. After a series of oppositions and cross-motions,[5] this court, on June 7, 1978, ordered a stay of the proceedings before the Customs Court pending disposition of the appeal and directed the court below to supplement the record with findings of fact and conclusions of law on which the orders of December 14, 1977, and February 28, 1978, were based.

### Customs Court

Pursuant to this court's direction, the Customs Court transmitted on June 30, 1978, the following findings of fact:

1. that section 1516(f) employs the definite article "The" before the word "consignee" and not the indefinite article "A" before such word as contended for by the movant, and, therefore, the word

---

being, nor likely to be sold in the United States at less than its fair value, or

(2) under section 1303 of this title that a bounty or grant is not being paid or bestowed,

an American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of a desire to contest such determination. Upon receipt of such notice the Secretary shall cause publication to be made thereof and of such manufacturer's, producer's, or wholesaler's desire to contest the determination. Within 30 days after such publication, such manufacturer, producer, or wholesaler may commence an action in the United States Customs Court contesting such determination.

**3.** 19 U.S.C. § 1516(f) states:

**Consignee or his agent as party in interest before the Customs Court**

(f) The consignee or his agent shall have the right to appear and to be heard as a party

in interest before the United States Customs Court.

**4.** Trade Act of 1974, Pub.L.No.93–618, 88 Stat. 1978 (1975) (hereinafter cited as Trade Act of 1974).

**5.** Airco opposed the motion for a stay and filed a cross-motion for dismissal of the appeal or, in the alternative, for summary affirmance of the order of the Customs Court. In response, N. C. Trading filed a cross-motion for an order denying Airco's cross-motion or, in the alternative, for summary reversal of the Customs Court's orders. The Government advised that it took no position with respect to the motion for a stay but that it supported Airco's cross-motion for dismissal of the appeal. On May 31, 1978, the Government filed a cross-motion for summary dismissal of the appeal or, in the alternative, for referral of the case to the Customs Court to make findings of fact and conclusions of law in support of the above-mentioned orders.

"consignee" has limited textual application;

2. that the validity of section 1516(d) was not challenged by the movant on any constitutional grounds in its motion to intervene.

The Customs Court also transmitted the following conclusions of law:

1. that the words "The consignee" in section 1516(f) refer *solely* to the consignee of the entry underlying the three party action provided for in 19 U.S.C. § 1516(c) between the American manufacturer, the United States, and the consignee of an entry of merchandise upon which the action is predicated and whose right to intervene is provided for in rule 5.1 of the Customs Court rules;

2. that section 1516(d) provides only for the maintenance of a two party action in the Customs Court between the American manufacturer and the United States, independent of any particular entry of merchandise; and

3. that absent a statutory basis the movant lacks standing to intervene, and the Customs Court lacks power to permit intervention of additional parties not properly before the court.

## OPINION

This appeal presents three issues for resolution: (1) whether N. C. Trading has established that it is a "consignee" of merchandise of the same kind as that involved in the Customs Court proceedings, namely: South African ferrochrome; (2) whether the Constitution requires that section 516 be so construed that a consignee of merchandise of the same kind as that involved in an action under section 516(d) has a right to appear and be heard as a party in interest; and (3) whether a consignee of merchandise of the same kind as that involved in a section 516(d) action has a statutory right under section 516(f) to appear and be heard as a party in interest.

### 1. N. C. Trading's Status as a Consignee

■ Appellees[6] argue that N. C. Trading has not established its alleged consignee status, "but relied solely on the self-serving statement that it is a consignee of South African Ferrochrome and on an unverified list of entries of ferrochrome purportedly made by N. C. Trading during 1976–1977." Nevertheless, Schedule A of N. C. Trading's original motion to intervene listed fifteen entries totaling over 35 million content pounds of South African ferrochrome imported during the period preceding the filing of that motion—March 12, 1976, through August 3, 1977—for which N. C. Trading paid over $222,000 in duties.[7] With its motion for rehearing, N. C. Trading submitted a *certified copy* of the consumption entry form, along with supporting documents, for entry No. 234735, which is listed on Schedule A.[8] These exhibits are sufficient to demonstrate that N. C. Trading imported South African ferrochrome during the pertinent period.

Appellees further argue that "[e]ven if N. C. Trading may have imported South African ferrochrome in June of 1977, that does not give to the company the eternal and unchanging status of 'importer-consignee'," and "there is nothing on the record herein to show whether appellant is in the business of importing ferrochrome from South Africa, is currently importing ferrochrome, or will be importing such merchandise in the future from South Africa when this case is finally concluded." While the remedy provided by section 516(d), which is discussed *infra* in greater detail, is prospective in nature, *i. e.,* to protect a domestic manufac-

---

6. For the purposes of this appeal, Airco and the Government have been denominated the appellees.

7. The date and the consumption entry number of each entry is indicated on Schedule A. Although appellees contest N. C. Trading's status generally, they have not claimed that N. C. Trading was not the consignee of record on any of the listed entries.

8. Although the certified papers on entry No. 234735 are difficult to read, they correspond completely with the information on Schedule A for the designated entry and list N. C. Trading as the importer of record.

turer *from future* importations, the basis of such a proceeding is a determination by the Secretary "that a bounty or grant is not being paid or bestowed." The Secretary must, therefore, look to the foreign government's current and past practices with respect to current and past exportations (although no specific entry is involved in a section 516(d) proceeding) to make his determination. Therefore, in light of N. C. Trading's demonstration of importations of South African ferrochrome immediately preceding its motion to intervene, we conclude that it has sufficiently demonstrated its status as a consignee of merchandise *of the same kind as that involved* in the Customs Court proceedings.

### 2. Statutory Construction of Section 516

#### A. Historical Development

Section 516, which first appeared in the Tariff Act of 1922, is unique in its authorization of intervention in a proceeding in the Customs Court. Under the 1922 act, section 516 permitted a domestic manufacturer to challenge the appraised value, the classification, or the rate of duty of imported merchandise of the kind manufactured by him. When dissatisfied with the action taken by the appraiser or the Secretary, the domestic manufacturer could, under appropriate circumstances, file either an appeal for reappraisal or a protest in connection with *a specific entry.* Tariff Act of 1922, ch. 356, §§ 516(a)–(b), 42 Stat. 970–71.

*The* consignee of the merchandise *on the entry involved in the appeal or protest* filed by the domestic manufacturer was given the concomitant right to be notified of such action and to appear as a party in interest.

*Id.*, § 516(c), 42 Stat. 971.[9] Moreover, *the* consignee's right to prevent the confidential information contained in the entry papers from being disclosed to the domestic manufacturer was recognized. *Id.*, § 516(d), 42 Stat. 971.

As carried over into the Tariff Act of 1930, section 516 reserved to *the* consignee of the merchandise *of the disputed entry* (in the appeal for reappraisal or protest filed by the domestic manufacturer) the same rights accorded in the 1922 act.[10]

■■ Minor changes were made to section 516 prior to the Trade Act of 1974. The provisions of section 516(d) were transferred to 28 U.S.C. § 2634(b),[11] and the Customs Courts Act of 1970 reenacted that provision in almost identical language to that of 28 U.S.C. § 2637(b).[12] The 1970 act also revised section 516 to reflect the consolidation of appraisal and classification functions within the Bureau of Customs. The right of the domestic manufacturer "to contest the appraised value or classification of, or rate or duty assessed upon, the merchandise" was carried over in section 516(c).[13] Nevertheless, as in the previous statutes, this right was limited to the merchandise of a designated entry; section 516(c) then provided, in pertinent part:

> Upon receipt of notice [of desire to contest] from the petitioner, the Secretary shall cause publication to be made of his decision as to the proper appraised value or classification or rate of duty and of the petitioner's desire to contest, and shall thereafter furnish the petitioner with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at such ports of entry des-

---

**9.** Section 516(c) of the Tariff Act of 1922 read in pertinent part:

> A copy of every appeal and every protest filed by an American manufacturer, producer, or wholesaler under the provisions of this section shall be mailed by the collector to the consignee or his agent within five days after the filing thereof, and such consignee or his agent shall have the right to appear and to be heard as a party in interest before the Board of General Appraisers.

**10.** The pertinent part of section 516(c) of the Tariff Act of 1930, ch. 497, Title IV, 46 Stat.

736–37, merely substituted the "United States Customs Court" for the "Board of General Appraisers" in the 1922 act.

**11.** Act of June 25, 1948, ch. 646, § 39, 62 Stat. 1002 (repeal of 19 U.S.C. § 1516(d)); *id.*, 62 Stat. 981 (Codification of Title 28).

**12.** Act of June 2, 1970, Pub.L. 91–271, Title I, § 118, 84 Stat. 280.

**13.** Act of June 2, 1970, Pub.L. 91–271, § 209, 84 Stat. 286.

ignated by the petitioner in his notice of desire to contest, *as will enable the petitioner to contest the appraised value or classification of, or rate of duty imposed upon, such merchandise in the liquidation of one such entry at such port.* The Secretary shall direct the appropriate customs officer at such ports to notify the petitioner by mail immediately when the first of such entries is liquidated. [Emphasis added.]

Section 516(e) preserved the right of *the* consignee to be heard as a party in interest in these actions.[14] Nevertheless, these revisions were not designed to have a substantive effect on the rights of parties under existing laws. H.R.Rep.No.91–1067, 91st Cong., 2d Sess. 30 (1970), *reprinted in* [1970] U.S.Code Cong. & Admin.News pp. 3188, 3217.

Throughout the many revisions of the statute, section 516 preserved the right of *the* consignee to appear and protect *its interests in the property* which was the subject of the domestic manufacturer's action. Prior to the Trade Act of 1974, the only three-party suits which could be brought under section 516 involved a domestic manufacturer, the Government, and *the* consignee of the designated entry which was the subject of the action. The statute made

no provision for participation by other "interested" consignees.

### B. The Trade Act of 1974

The Trade Act of 1974 amended sections 516(a), (b), and (c) to provide for judicial review of negative countervailing duty determinations by the Secretary. Trade Act of 1974, Pub.L.No.93–618, § 331, 88 Stat. 2052–53.[15] The amendment followed this court's decision in *United States v. Hammond Lead Products, Inc.*, 440 F.2d 1024, 58 CCPA 129, C.A.D. 1017 (1971), which held that judicial review of negative countervailing duty determinations was not available to domestic manufacturers. H.R.Rep.No. 93–571, 93d Cong., 1st Sess. 76–77 (1973); S.Rep.No.93–1298, 93d Cong., 2d Sess. 185 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7186, 7320.[16]

The House version of H.R. 10710, which became the Trade Act of 1974, retained the language of the previous sections 516(a), (b), and (c), except that it provided for judicial review of the failure of the Customs Service to assess countervailing duties in the liquidation of a designated entry at a specified port.

H.R. 10710, as reported by the Senate Finance Committee, redesignated sections 516(d), (e), (f), and (g) as 516(e), (f), (g), and

---

14. Section 516(e), created by the Act of June 2, 1970, Pub.L. 91–271, § 209, 84 Stat. 287, stated:

The consignee or his agent shall have the right to appear and to be heard as a party in interest before the United States Customs Court.

"The consignee" of § 516(e) is clearly *the* consignee of *the entry involved* in the § 516(c) action since that is the *only* consignee mentioned.

15. The countervailing duty provisions of section 303 of the Tariff Act of 1930 were also amended by this section of the Trade Act of 1974 to provide time limits and procedures for investigating, ascertaining, and determining whether a bounty or grant had been bestowed and the amount thereof.

16. The Senate committee summarized the need for this additional judicial review as follows:

Section 331 of the bill would also amend section 516 of the 1930 Tariff Act in such a way as to provide American manufacturers, producers, or wholesalers, the right to seek judicial review of negative countervailing duty determinations by the Secretary of the

Treasury. Under existing law, judicial review can only be had after the Secretary makes an affirmative finding of bounty or grant and levies countervailing duties. Thus, the present review system is only of benefit to importers and others adversely affected by countervailing duties. The bill would amend section 516 of the 1930 Tariff Act so that manufacturers and others could petition the Secretary of the Treasury to reconsider his determination that countervailing duties should not be levied in a particular case. There would be no time frame for the Secretary to reach a decision on the merits of the complaint by the petitioner. However, if the Secretary decides that his negative countervailing duty decision is correct the petitioner could serve notice that he will contest in the Customs Court and thereby initiate the process of judicial review.

Senate Comm. on Finance, 93d Cong., 2d Sess., Summary and Analysis of H.R. 10710—The Trade Reform Act of 1973, at 51 (Comm. Print 1974).

(h), respectively. A new section 516(d) was inserted, providing for judicial review of a negative determination by the Secretary with respect to alleged sales at less than fair value of imported merchandise under section 201 of the Antidumping Act of 1921.[17] Action could be initiated by American manufacturers of the same type of merchandise as that described in the Secretary's negative determination, without reference to any specific entry.[18] On the Senate floor, the new section was amended to permit domestic manufacturers to obtain judicial review of the Secretary's negative determination under 19 U.S.C. § 1303 concerning the existence of a bounty or grant.[19]

17. Antidumping Act of 1921, ch. 14, § 201, 42 Stat. 11, as amended, (codified in 19 U.S.C. § 160).

18. H.R. 10710, 93d Cong., 2d Sess., § 321(g)(1), at 216 (1970) (as reported by the Senate Finance Committee). Although this dealt with antidumping cases, it is the only legislative history regarding the purpose or application of new section 516(d), which was subsequently amended to include countervailing duties cases. The Senate Finance Committee report, S.Rep. No.93–1298, 93d Cong., 2d Sess. 33 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7186, 7210, states the purpose of this new section of the bill as follows:

> 6. *Judicial review.*—The bill provides for explicit statutory language authorizing judicial review for U.S. producers and manufacturers in the U.S. customs courts of negative antidumping decisions made by the Secretary of the Treasury. Importers and foreign producers are entitled to judicial review under current law.

There is no suggestion that "importers and consignees" were to be granted any more rights than they had under current law. The sectional analysis of the report, which discusses in detail the reason for adding the new section makes no mention of the right of an importer or consignee to appear as a party in interest:

> *Equal Judicial Review Rights for Domestic Producers.*—The House bill did not contain a provision permitting domestic manufacturers, producers or wholesalers the right to obtain judicial review of negative antidumping decisions in the U.S. Customs Court. The House report makes references to an informal opinion of the Treasury Department which asserts that existing law provides for judicial review of negative antidumping decisions on the part of the U.S. manufacturers, producers, or wholesalers. The Committee generally agrees with this opinion. However, it is the view of the Committee that since some question remains as to the ability of American manufacturers, producers, and wholesalers to obtain judicial review of negative antidumping determinations under section 516 of the Tariff Act of 1930, the law ought to be explicit on this point. The Committee believes it essential that domestic pro-
>
> ducers have the right to judicial review of negative price discrimination (LTFV) determinations, just as foreign producers and importers have the right to obtain judicial review of positive price discrimination (LTFV) determinations.
>
> The Committee, therefore, added new subsection (g) of section 321, which would amend section 516 of the Tariff Act of 1930 (19 U.S.C. § 1516) and sections 2631 and 2632 of title 28, United States Code, to provide *explicitly* for judicial review of negative antidumping determinations made by the Secretary of the Treasury. Under the amendment, within 30 days after a negative fair value determination by the Secretary, any American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of his desire to contest the decision. The Secretary would then publish notice of the desire to contest the determination and, within 30 days after such publication, the manufacturer, producer, or wholesaler may commence an action in the Customs Court for review of the Secretary's determination. The amendments made to title 28, United States Code, would make specific provision for the hearing of such actions in the Customs Court.

*Id.* at 178, *reprinted in* [1974] U.S.Code Cong. & Admin.News at pp. 7314–15.

19. The Conference committee report, H.R.93–1644, 93d Cong., 2d Sess. 44 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7367, 7389, summarizes the purpose of this amendment:

> Amendment No. 347: The Senate bill adds a new section 516(d) to the Tariff Act to provide domestic manufacturers, producers, or wholesalers the right of judicial review in the U.S. Customs Court of negative dumping and countervailing duty determinations. The written notice of desire to contest must be filed with the Secretary of the Treasury within 30 days after the determination. This provision will apply to dumping and countervailing duty complaints made on or after enactment of the Trade Act. Under existing law importers and foreign producers are entitled to judicial review. Further, with respect to

Sections 516(a), (b), and (c) were also amended to provide for judicial review of the failure of the Customs Service to assess antidumping duties in the liquidation of a designated entry at a specified port.

■ It is to be emphasized that the Trade Act of 1974, while continuing authority for countervailing duty proceedings (with the added judicial review of a negative determination) under section 516(c) [20] also preserved the right of *the* consignee of the liquidated entry involved (section 516(f)). Moreover, it created a new cause of action under section 516(d) for a dissatisfied domestic manufacturer to challenge the Secretary's negative determination under the countervailing duty provisions *without designating any particular entry*, such as provided by section 516(c).

### C. *Analysis*

N. C. Trading argues that an action under section 516 has been, and continues to be a three-party action, including an American manufacturer, the Government, and a consignee, saying:

> The legislative history shows that Congress merely intended to make clear the scope of judicial review available to American manufacturers without otherwise disturbing the substance of Section 516. Nowhere in the legislative history of Section 516 is there a single expression of congressional intent to exclude a consignee from a proceeding brought pursuant to Section 516(d) or to change what had been for over 50 years a three party action to a two party action.

However, we are persuaded that appellant's argument is premised on a misunderstanding of section 516 proceedings prior to the 1974 amendment. Indeed, appellant furnishes the key to the resolution of this issue in its brief, thus:

> This provision [section 516 before the 1974 amendment] manifests Congress' recognition, from the very beginning, that *a consignee of the merchandise that is the subject of the proceeding under Section 516* has a direct and substantial interest in such proceeding. The amendments enacted by the Trade Act of 1974 did not change this. Such a change would, if enacted, have radically altered the very nature of a proceeding under Section 516. [Emphasis added.]

■ Prior to 1974, only a consignee *of the merchandise of the entry involved* in

---

an antidumping proceeding or countervailing duty proceeding, upon summons, the Secretary is required to furnish the Customs Court with certified copies of the transcript of all hearings, and all notices, determinations or other matters published in the Federal Register in connection with a particular antidumping or countervailing duty proceeding. The House bill did not contain a similar provision. The House recedes.

20.  19 U.S.C. § 1516(c) reads:
**Determination of correctness of initial appraised value, classification, rate of duty, or non-assessment of countervailing duties or antidumping duties; contest by petitioner; procedure**
(c) If the Secretary decides that the appraised value or classification of the articles or the rate of duty with respect to which a petition was filed pursuant to subsection (a) of this section is correct, or that countervailing duties or antidumping duties should not be assessed, he shall so inform the petitioner. If dissatisfied with the decision of the Secretary, the petitioner may file with the Secretary, not later than thirty days after the date of the decision, notice that he desires to contest the appraised value or classification of, or rate of duty assessed upon or the failure to assess countervailing duties or antidumping duties upon, the merchandise. Upon receipt of notice from the petitioner, the Secretary shall cause publication to be made of his decision as to the proper appraised value or classification or rate of duty or that countervailing duties or antidumping duties should · not be assessed and of the petitioner's desire to contest, and shall thereafter furnish the petitioner with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at such ports of entry designated by the petitioner in his notice of desire to contest, as will enable the petitioner to contest the appraised value or classification of, or rate of duty imposed upon or failure to assess countervailing duties or antidumping duties upon, such merchandise in the liquidation of one such entry at such port. The Secretary shall direct the appropriate Customs officer at such ports to notify the petitioner by mail immediately when the first of such entries is liquidated.

the section 516 proceeding had a right to be heard as a party in interest; no other "interested" consignee was authorized to participate as a party in interest.[21] We agree with appellant that the Trade Act of 1974 did not alter previous practice. Only a consignee *of the merchandise of the entry involved* has a right to participate as a party in interest. Indeed, if any other consignee were allowed to become a party in interest, such a change would have radically altered the very nature of a proceeding under section 516.

In support of its argument, appellant states that there "is absolutely no authority in the legislative history (and none is cited by the Government) for the proposition that Congress 'intended' singular treatment for Section 516(d)" and that section 516(f) does not apply exclusively to a cause of action authorized under sections 516(a), (b), and (c). However, there is no legislative history indicating that Congress intended that the section 516(f) right of "[t]he consignee" to participate as a party in interest applies to section 516(d) proceedings. Moreover, there is no designated entry mentioned in section 516(d), so that there can be no corresponding consignee as required by section 516(f).[22] N. C. Trading cites 1 U.S.C. § 1 ["In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular in-

clude and apply to several persons, parties, or things"] for the proposition that "the definite article 'The' before the word 'consignee' in Section 516(f), instead of the indefinite article 'A' before such word, is of little or no significance," and, thus, " 'the consignee' in Section 516(f) may be construed generically to include any consignee." Such citation is unconvincing in light of the clear statutory reference to *the* consignee in section 516(c) of the Tariff Act of 1930, which provided the context for section 516(e) of the 1970 act (changed to section 516(f) by the Trade Act of 1974).

Interpreting section 516(d) to authorize only two-party actions, involving the domestic manufacturer and the Government,[23] not only continues the long-standing practice that consignees of merchandise other than that involved in a section 516 action are excluded from participation, but also is consistent with the absence from section 516(d) of any mention of "consignees." To interpret section 516(d) as N. C. Trading suggests would open action thereunder to participation by numerous consignees—all past and current importers of merchandise of the kind involved, and even all future or potential importers. It is highly improbable that Congress would have so intended without mentioning it in the legislative history of the Trade Act of 1974.

**21.** The concept of intervention by "interested" parties has not been incorporated in the statute governing Customs Court litigation. Neither an importer-consignee who is "interested" in another importer's action, nor a domestic manufacturer "interested" in another domestic manufacturer's proceeding, can become a party in interest and thereby circumvent the statutorily prescribed conditions precedent to the initiation of litigation. *See* 19 U.S.C. §§ 1514–16; 28 U.S.C. § 1582. An importer, who shares an identity of "interest" with one who has become a party in interest in a section 516(c) proceeding, cannot, by intervention, become another party in interest, since the statute has limited importer representation to the importer of a *particular entry.*

**22.** It is noteworthy that section 516(f) does not say that "A consignee" has the right to appear; rather, it says "The consignee." This can only refer to *the* consignee of *the* entry made the subject of a section 516(c) proceeding, since

there is no entry present in a section 516(d) proceeding.

**23.** The Customs Court adopted this interpretation when it amended its Rule 5.1(a) to provide:

(a) **Party in Interest**: A party in interest in an action filed under section 516(c) of the Tariff Act of 1930, as amended (19 U.S.C. § 1516(c), as amended) shall be deemed to be a defendant for the purposes of the application of these rules to that action.

On January 19, 1976, subsection "(c)" was added to "section 516" and "§ 1516" to reflect the change made in the Trade Act of 1974. As noted, previously there had been a party in interest in every action filed under section 516, and it was, therefore, unnecessary to specify the subsection in the rule. In view of the newly-enacted subsection (d), enabling actions without parties in interest, the inclusion of subsection "(c)" in the rule became necessary.

■ Although the parties have discussed at some length the application of Fed.R. Civ.P. 24(a),[24] which concerns intervention as a matter of right, to section 516(d) proceedings, suffice it to say that appellant's citation to the Federal Rules of Civil Procedure is inapposite inasmuch as the rules are expressly made applicable only to the United States district courts. Fed.R.Civ.P. 1; *United States v. Torch Manufacturing Co.,* 509 F.2d 1187, 1192 n. 8, 62 CCPA 41, 47 n. 8, C.A.D. 1143 (1975). *See* 28 U.S.C. § 2072.[25]

■ *3. Constitutional Considerations*[26]

■ N. C. Trading argues that if it were excluded from a proceeding under section 516(d), it would "be deprived of . . . property, without due process of law"[27] and

be denied the right of access to the courts.[28] This argument rests on the contention that if Airco were successful in this litigation, N. C. Trading would be (1) required to pay "substantial premiums for bonds," as did the importers of the merchandise after the Customs Court's reversal of the Secretary's decision in *Zenith Radio Corp. v. United States,* —— U.S. ——, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978), "or incur charges for letters of credit to cover the potential liabilities for countervailing duties" on future imports;[29] (2) subjected to business uncertainty due to the suspension of liquidation which would occur;[30] and (3) deprived of an opportunity to secure prompt and meaningful administrative and judicial review of any assessment of countervailing duties.

24. Fed.R.Civ.P. 24(a) reads:

    **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

25. Appellees argue that in the "absence of express statutory authority to intervene in an action in the Customs Court, which is a court of limited statutory jurisdiction, none may be implied." If the Customs Court does have authority to allow intervention, it would clearly be discretionary. Since appellant has not contended that the Customs Court abused its discretion in denying intervention, we need not reach the issue of the scope of the Customs Court's authority.

26. The Customs Court found "that the validity of section 1516(d) [516(d)] was not challenged by the movant on any constitutional grounds in its motion to intervene." While N. C. Trading did not argue that section 516(d) was unconstitutional, it did argue that "to construe the statute in a way that would deny a consignee the right to appear and be heard in this action would render section 516(d) unconstitutional." N. C. Trading also argues that "failure to give effect to the statute would raise serious constitutional questions, since a consignee has a direct and substantial interest in the outcome of the case—an interest not adequately represented by the existing parties." Hence, in the court below and in this court, appellant has contend-

ed that since the statute is capable of two different constructions, it must be construed in a manner that will avoid any constitutional infirmity. *See* C. Sands, 2A *Sutherland Statutes and Statutory Construction* § 45.11 (1973), and cases cited therein. Accordingly, we will consider appellant's constitutional arguments.

27. U.S.Const. amend. V. Although there is an issue regarding whether appellant has a constitutionally protectable property interest, we will assume, *arguendo*, that N. C. Trading has such a protectable property interest.

28. U.S.Const. amend. I reads in pertinent part: "Congress shall make no law . . . respecting the right of the people . . . to petition the Government for a redress of grievances." This right includes the right of access to the courts. *See, e. g., California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Moreover, this right is subject to the due process protection of the Fifth Amendment; that is, the opportunity must be at a meaningful time and in a meaningful manner. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

29. Although there has been no demonstration of the amounts of any premiums or charges, we will assume that such liabilities would be substantial.

30. Under section 516(g), if the domestic manufacturer's action is sustained in whole or in part, the liquidation of subsequent entries of merchandise of the same kind is suspended pending a final disposition of the action.

■ Although a person must be afforded an opportunity for some kind of hearing before being finally deprived of a property interest, all interests do not require the same type of protection. *Boddie v. Connecticut, supra* note 28. Due process is flexible and demands only such procedural protection as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). To determine whether the procedures are constitutionally sufficient requires consideration of the governmental and private interests affected. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 97 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ In the related field of income tax litigation, the Supreme Court, in the landmark case of *Phillips v. Commissioner,* 283 U.S. 589, 599, 51 S.Ct. 608, 612, 75 L.Ed. 1289 (1930), remarked that—

> it has already been shown that the right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery is paramount. The privilege of delaying payment pending immediate judicial review, by filing a bond, was granted by the sovereign as a matter of grace solely for the convenience of the taxpayer. [Footnote omitted.]

Accordingly, the Court concluded, *id.* at 596–97, 51 S.Ct. at 611:

> Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate.

*Phillips* has continued to be cited for the principle that the immediate seizure of a property interest, without an opportunity for a prior hearing, is constitutionally permissible when necessary to serve an important governmental or public interest, such as the collection of taxes. *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976); *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Appellant has cited no departures from this principle.

This court, relying upon *Phillips,* has held that an importer has no right to a hearing prior to the assessment of duties, if the opportunity given for ultimate judicial review of the determination of liability is adequate. *Dart Export Co. v. United States,* 43 CCPA 64, 75, C.A.D. 610, *cert. denied,* 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956).

■ Since N. C. Trading has no right to a hearing prior to the assessment of duties,[31] we must conclude that it had no right to intervene in the section 516(d) proceeding below in order to be heard *before* posting bond or other security on importation, or even *before* paying duties that it believed to be unlawful.

■ In contending that there will be no prompt and meaningful post-deprivation hearing of any kind,[32] appellant says that should the Customs Court reverse the Secretary's negative countervailing duty determination, liquidation of entries of all South African ferrochrome would remain suspended pending appeal (and any certiorari petitions); that during this period appellant

---

31. Congress has the right, under the power to regulate foreign commerce, to determine the conditions under which the right to import may be exercised, *Buttfield v. Stranahan,* 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525 (1904), and one of those conditions is that duties, even if believed to be invalidly assessed, must be paid prior to obtaining a judicial hearing. *United States v. Sherman,* 237 U.S. 146, 152, 35 S.Ct. 520, 59 L.Ed. 883 (1915).

32. Appellant cites the recent Supreme Court opinion in *Commissioner of Internal Revenue v. Shapiro, supra,* 424 U.S. at 630 n.12, 96 S.Ct. at 1072, wherein the Court stated that "it is very doubtful that the need to collect the revenues is a sufficient reason to justify seizure causing irreparable injury without a prompt post-seizure inquiry of any kind."

would be exposed to the possibility of additional duties of an unknown amount;[33] and that, were Airco to ultimately prevail on appeal, only after the Secretary determined the actual amount of the countervailing duties to be imposed would the entries be liquidated and N. C. Trading have its first opportunity to protest the decision. Appellant also suggests that its protest could only be denied in light of the judicial precedent, so that it would not have any meaningful administrative review.[34] However, there would be no adverse impact on appellant unless a court of competent jurisdiction holds that countervailing duties should be imposed. Although an importer would be "relegated to the sidelines" during any appeal therefrom, shortly after a decision on appeal it would have the right to protest any countervailing duty assessed[35] and to file a summons and complaint. We are satisfied that the delays involved would not be excessive, so that there would be no violation of either the First or Fifth Amendments. Indeed, appellant's position is not materially different from that of an importer involved in the usual classification or valuation dispute which, although dissatisfied with the amount of duty, may have a long wait for the appropriate customs officer to liquidate his entry. *See United States v. Boe, Chief Judge, United States Customs Court,* 543 F.2d 151, 64 CCPA 11, C.A.D. 1171 (1976); *Dart Export Corp. v. United States, supra.* Appellant's contentions are more appropriately directed to the financial risk-taking necessarily associated with the import business. Like many successful litigants, N. C. Trading, even if it prevails, will never be entirely whole since it will have endured business uncertainty, loss of interest, the payment of attorneys' fees, and the expenditure of executives' and employees' time.

Regarding appellant's point that it would be difficult to obtain meaningful judicial review, we note that, in numerous test cases brought by importers before the Customs Court, there are other importers of the same kind of merchandise that is the subject of the litigation, which importers are not parties to the particular litigation, although they have an interest in, and stand to be affected by, a decision in a particular test case. However, an "interested" nonparty who is displeased over the outcome of a test case is free to bring its own action with a view to improving the record,[36] rearguing the law, and urging that the earlier decision should not be followed. *See United States v. Stone & Downer Co.,* 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927). If and when N. C. Trading becomes a consignee subjected to the payment of countervailing duties, it will be entitled to review of every aspect of a protested administrative decision. We agree with the following statement of appellee Airco:

> Under N. C. Trading's theory, none of those "interested" nonparties could obtain meaningful judicial review that would pass Constitutional muster in a later case because of the precedential value of the earlier adverse decision—notwithstanding the Supreme Court's recognition and approval of the "relitigation" practice in the customs tribunals. *Stone & Downer, supra.* Clearly, that N. C. Trading has no statutory right to participate in the subject American manufac-

---

**33.** This uncertainty, according to N. C. Trading, would injure its competitive position and be even more damaging to its business interests than the economic effects of any bonding requirements.

**34.** Appellant opines that—
  although the doctrine of *res judicata* does not preclude relitigation, the prior adverse decision will stand in N. C. Trading's path as controlling legal precedent, which will be difficult, if not impossible, to overcome. Therefore, meaningful judicial review, as well as administrative review, will be impossible.

**35.** 19 CFR 174.22 provides for accelerated disposition of protests within thirty days after an appropriate request.

**36.** If it is not possible to produce a new and factually different record and only legal arguments are at stake, appellant faces no different risk under the doctrine of *stare decisis* than any person who finds that a principle of law has been decided adversely to him prior to a decision on his lawsuit.

turer's proceeding (just as an interested American manufacturer has no right to participate in an importer's action challenging the assessment of countervailing duties) is totally without Constitutional significance.

Although appellant argues that the Government will not adequately represent its interests in the proceeding below, it will have an opportunity, if countervailing duties are assessed on its imports, to fully represent its own interests in the Customs Court.

In view of the foregoing, we hold that the Constitution does not require that section 516 be so construed that a consignee of merchandise of the same kind as that involved in an action under section 516(d) has a right to appear and be heard as a party in interest; further, that a consignee of merchandise of the same kind as that involved in a section 516(d) action does not have a statutory right under section 516(f) to appear and be heard as a party in interest.

The order of the Customs Court denying N. C. Trading's motion to intervene is *affirmed*.