# United States Court of Appeals for the Federal Circuit

05-1332

SERGIO U. RETAMAL,

Plaintiff-Appellant,

and

JOHN J. GALVIN,

Sanctioned Party-Appellant,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,
DEPARTMENT OF HOMELAND SECURITY,

Defendant-Appellee.


John J. Galvin, Galvin & Mlawski, of New York, New York, argued for plaintiff-appellant and sanctioned party-appellant.

Jack S. Rockafellow, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, of New York, New York. Of counsel on the brief was Marc K. Matthews, Attorney, Office of Associate Chief Counsel, United States Customs and Border Protection, of Long Beach, California.

Appealed from: United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

05-1332

SERGIO U. RETAMAL,

Plaintiff-Appellant,

and

JOHN J. GALVIN,

Sanctioned Party-Appellant,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,
DEPARTMENT OF HOMELAND SECURITY,

Defendant-Appellee.

_____

DECIDED:  March 6, 2006

_____

Before NEWMAN, MAYER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

Sergio U. Retamal appeals the United States Court of International Trade's grant of summary judgment in favor of the United States Customs and Border Protection, Department of Homeland Security, Retamal v. U.S. Customs & Border Prot. Dep't of Homeland Sec., 27 I.T.R.D. (BNA) 1396 (Ct. Int'l Trade Nov. 24, 2004).  John J. Galvin appeals the trial court's written admonition against him,  Retamal, No. 03-00613, slip.

op. 05-15 (Ct. Int'l Trade Feb. 3, 2005). Because the trial court was without subject matter jurisdiction, we remand with instructions that the case be dismissed. We further hold that the admonition of Galvin constitutes a sanction and, because we find its imposition was an abuse of discretion, we reverse.

## Background

Retamal was a licensed customhouse broker who was not actively engaged in transacting business as a customs broker. In 2003, he failed to file his triennial status report on or before March 1, as required by 19 U.S.C. § 1641(g)(1)[1] and 19 C.F.R. § 111.30(a).[2] As a result, his license was suspended pursuant to 19 U.S.C. § 1641(g)(2).[3] As required by statute, the United States Customs Service ("Customs" or

---

[1] 19 U.S.C. § 1641(g)(1) states that "[o]n February 1, 1985, and on February 1 of each third year thereafter, each person who is licensed under subsection (b) of this section shall file with the Secretary of the Treasury a report as to— (A) whether such person is actively engaged in business as a customs broker; and (B) the name under, and the address at, which such business is being transacted."

[2] 19 C.F.R. § 111.30(a) states that "[w]hen a broker changes his business address, he must immediately give written notice of his new address to each director of a port that is affected by the change of address. In addition, if an individual broker is not actively engaged in transacting business as a broker and changes his non-business mailing address, he must give written notice of the new address in the status report required by paragraph (d) of this section."

[3] 19 U.S.C. § 1641(g)(2) provides:

(2) Suspension and revocation. If a person licensed under subsection (b) of this section fails to file the required report by March 1 of the reporting year, the license is suspended, and may be thereafter revoked subject to the following procedures:
(A) The Secretary shall transmit written notice of suspension to the licensee no later than March 31 of the reporting year.
(B) If the licensee files the required report within 60 days of receipt of the Secretary's notice, the license shall be reinstated.

"the government") sent written notice of the suspension to Retamal; however, the notice was returned undelivered. Retamal contends he prepared his triennial status report and payment on April 30, 2003, but the report and payment were not sent until May 24, 2003. On June 5, 2003, Customs returned the report and payment to Retamal and advised him that his broker's license had been revoked on May 6, 2003. Customs denied his requests for relief from revocation.

Retamal then filed suit pro se in the Court of International Trade. The trial court granted summary judgment to the government and, relying upon 28 U.S.C. § 2636(g),[4] dismissed the action as time-barred.

John Galvin then undertook pro bono representation of Retamal and filed a motion for rehearing on December 15, 2004. The government filed an opposition, and Galvin filed a reply. On January 21, 2005, the trial court sua sponte issued an order to show cause why Galvin "should not be sanctioned for violation of the Court's rules of practice." The court denied the motion for rehearing and admonished Galvin to adhere to the court's rules. The court amended its initial decision by deleting the reference to the statute of limitations in 19 U.S.C. § 1641(e)(1) and 28 U.S.C. § 2636(g) and adding the statement that "this action is still time-barred by operation of law," citing 19 U.S.C.

---

> (C) In the event the required report is not filed within the 60-day period, the license shall be revoked without prejudice to the filing of an application for a new license.

[4] 28 U.S.C. § 2636(g) states that "[a] civil action contesting the denial or revocation by the Secretary of the Treasury of a customs broker's license or permit under subsection (b) or (c) of section 641 of the Tariff Act of 1930, or the revocation or suspension of such license or permit or the imposition of a monetary penalty in lieu thereof by such Secretary under section 641(d) of such Act, is barred unless commenced in accordance with the rules of the Court of International Trade within sixty days after the date of the entry of the decision or order of such Secretary."

§ 1641(g)(2).  Retamal appeals the trial court's grant of summary judgment in the government's favor; Galvin appeals the admonition.

Discussion

I.

"As an appellate body, we have inherent jurisdiction to determine whether a lower tribunal had jurisdiction."  Interspiro USA v. Figgie Int'l, 18 F.3d 927, 930 (Fed. Cir. 1994) (citing C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 877 (Fed. Cir. 1983)).  Therefore, before addressing the trial court's decision on the timeliness of the action, we first determine if it had jurisdiction.[5]  Because jurisdiction is an issue of law, our review is de novo.  Xerox Corp. v. United States, 289 F.3d 792, 793-94 (Fed. Cir. 2002).

The Court of International Trade's jurisdiction is set forth generally at 28 U.S.C. § 1581.  All agree that section 1581(g) does not provide the trial court jurisdiction over Retamal's case.  Although section 1581(g) provides jurisdiction to review the revocation of licenses under certain statutory provisions, revocations under 19 U.S.C. § 1641(g) is not one of them.

Retamal contends, however, that jurisdiction lies under section 1581(i)(4).  Although we have described this subsection as a "broad residual jurisdictional provision," Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), it is of no avail here.  This subsection provides the Court of International Trade with jurisdiction

---

[5]    The trial court observed in its amended opinion that "the statutes 'do not address [] or confer jurisdiction in cases involving revocation of a broker's license by operation of 19 U.S.C. § 1641(g)(2)(C).'"  Although this language suggests that the court recognized that it lacked subject matter jurisdiction, and the government says that the case was in fact dismissed for a lack of jurisdiction, the trial court's ultimate conclusion was that the action was time-barred, not that it lacked jurisdiction.

over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1) – (3) of this subsection and subsections (a) – (h) of this section . . . ." 28 U.S.C. § 1581(i)(4) (2000). However, Retamal's claims do not relate to the "administration and enforcement" of a matter referred to in subsections 1581(a)-(h) or in 1581(i)(1)-(3). Therefore, section 1581(i)(4) does not provide an independent ground for jurisdiction in this case.

Retamal's reliance on Allen v. Regan, 607 F. Supp. 133 (Ct. Int'l Trade 1985), for the conclusion that jurisdiction exists under section 1581(i)(4) is unpersuasive. "Apart from the obvious comment that Court of International Trade decisions are not binding precedent on this court," Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1556 (Fed. Cir. 1988), Allen is entirely different from the case before us. That case involved an applicant for a customhouse broker's license who had passed the requisite examination and was awaiting the results of an investigation into his integrity and financial responsibility. After four years passed with no decision, the applicant filed suit in the Court of International Trade. The court concluded that it had jurisdiction under section 1581(i)(4) regardless of whether jurisdiction was "technically proper under 28 U.S.C. § 1581(g)," 607 F. Supp. at 134, because reviewing the delay in the licensing process related to the "administration and enforcement" of a matter referenced in 28 U.S.C. §§ 1581(a)-(h) or 28 U.S.C. §§ 1581(i)(1)-(3), namely 28 U.S.C. § 1581(g). Here, however, the revocation of a license under 19 U.S.C. § 1641(g)(2) is not referenced anywhere in 28 U.S.C. §§ 1581(a)-(h) or 28 U.S.C. §§ 1581(i)(1)-(3) and, therefore, jurisdiction cannot lie under section 1581(i)(4). Because "an appellate court has no

jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction," Glasstech, Inc. v. Ab Kyro Oy, 769 F.2d 1574, 1577 (Fed. Cir. 1985), we vacate the trial court's decision.

II.

Although we conclude that the trial court lacked jurisdiction over the merits of this case, we recognize that under Court of International Trade Rule 11[6] and its inherent power, the court has the authority to discipline attorneys appearing before it. See Chambers v. NASCO, 501 U.S. 32, 41 (1991). Therefore, the trial court had authority to discipline Galvin.

In Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346 (Fed. Cir. 2003), we held that the explicit and formal reprimand of the attorney in an unpublished opinion constituted a sanction that was immediately appealable. We reasoned that "a judicial reprimand is likely to have a serious adverse impact upon a lawyer's professional reputation and career. A lawyer's reputation is one of his most important professional assets. Indeed, such a reprimand may have a more serious adverse impact upon a lawyer than the imposition of a monetary sanction." 315 F.3d at 1352-53. This reasoning applies here and compels the conclusion that the admonition was a sanction.

We review the imposition of the sanction for abuse of discretion. Id. at 1354. The trial court based its admonition of Galvin upon purported violations of Rules 75(c), 7(d), and 11(b). We give "broad deference to the trial court's application of local

---

[6] Although the Federal Rules of Civil Procedure do not apply in cases before the Court of International Trade, In re N.C. Trading, 586 F.2d 221, 231 (CCPA 1978), the court has its own Rule 11 that is identical in scope to the federal rule. All references to "Rules" are to the Rules of the Court of International Trade.

05-1332                                    6

procedural rules in view of the trial court's need to control the parties and flow of litigation before it." Sandisk Corp. v. Memorex Prods., 415 F.3d 1278, 1292 (Fed. Cir. 2005). However, it is an abuse of discretion where "'(1) the decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision.'" Id. (quoting Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed. Cir. 2002)).

The trial court concluded that Galvin violated Rule 75 by filing a notice of appearance form instead of filing a substitution of counsel form. Rule 75(c) states that "[a] party who desires to substitute an attorney may do so by serving a notice of substitution upon the prior attorney of record and the other parties." In addition, Rule 75(a) unmistakably uses the term "attorneys" as distinct from the term "individuals." In this context, Retamal was an "individual" and not an attorney and, since he had previously proceeded pro se, he did not substitute a new attorney for a previous attorney. Therefore, under the trial court's own rules, Galvin properly filed a notice of appearance. This conclusion is bolstered by the fact that the clerk of court sent Retamal a letter informing him that any future counsel should "file with our Court their Notice of Appearance as soon as possible." To the extent that the sanction was grounded upon a violation of Rule 75, it was based on an erroneous conclusion of law.

The trial court also grounded its sanction on a violation of Rule 7(d). Absent leave of the court, the trial court's rules allow reply briefs only when a dispositive motion is at issue. Rule 7(d); Volkswagen of Am. v. United States, 4 F. Supp. 2d 1259, 1261 n.1 (Ct. Int'l Trade 1998). Rule 7(g) defines dispositive motions: "Dispositive motions

include: motions for judgment on the pleadings; motions for summary judgment; motions for judgment upon an agency record; motions to dismiss an action; and any other motion for a final determination of an action." Although a motion for rehearing is not expressly listed as dispositive in Rule 7(g), the trial court has previously said, "In this court's view, a motion for rehearing pursuant to CIT Rule 59, depending on its content, can be either dispositive within the foregoing definition [of Rule 7(g)] or not." Belfont Sales Corp. v. United States, 698 F. Supp. 916, 919 n.7 (Ct. Int'l Trade 1988) (citations omitted); see also 4 F. Supp. 2d at 1261 n.1 ("Although not obvious from the court rules, a motion for rehearing is not a dispositive motion unless it will result in the final determination of the case. Thus, a motion for rehearing pursuant to USCIT R. 59 may or may not be dispositive depending on its content." (citations omitted)).

Here, the trial court concluded that the reply brief was improperly filed because the motion for rehearing was not dispositive. We understand that the motion for rehearing would not necessarily result in a final disposition because it argued for the case to be heard on the merits, as opposed to a specific final disposition. However, we also note that the government filed its response to the motion within the thirty day time limit for dispositive motions and not within the ten day limit for nondispositive motions. In addition, the court's electronic docketing system identified the motion as dispositive. At best, the nature of the motion and the propriety of filing a reply brief were unclear.

Finally, because the motion for rehearing was neither frivolous nor inappropriate the trial court abused its discretion by basing the sanction on a violation of Rule 11 or the court's rules concerning rehearings. The court has an established standard for rehearing:

> A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case. In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding.

N. Am. Foreign Trading Corp. v. United States, 607 F. Supp. 1471, 1473 (Ct. Int'l Trade 1985) (quoting W.J. Byrnes & Co. v. United States, 68 Cust. Ct. 358 (1972)) (additional citations omitted). In addition, Rule 61 provides:

> No error . . . in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Citing the precedent of other courts, the trial court also said that such a motion is only proper where it will probably bring about a different result. Relying on these standards, the court concluded that there was no injustice to correct and the motion for rehearing would not result in a different outcome.

In arguing for rehearing, Galvin contended that the trial court's decision was "manifestly erroneous." The court responded by observing that while it has applied the "manifestly erroneous" standard, it is only properly applied when another court's denial of a motion for rehearing is being reviewed; it is not the proper standard in ruling on such a motion in the first instance. But some decisions of the trial court do indeed recite the "manifestly erroneous" standard in ruling on a motion for rehearing in the first

instance. See Asociacion Colombiana de Exportadores de Flores v. United States, 19 F. Supp. 2d 1116, 1118 (Ct. Int'l Trade 1998) ("[A] court's previous decision will not be disturbed [on a motion for rehearing] unless it is 'manifestly erroneous.'" (citation omitted)). Therefore, in the context of reviewing a sanction against Galvin for filing a frivolous or unwarranted motion, we bear in mind that this standard has occasionally been applied by the trial court itself.

Regardless of the proper standard, we conclude that the motion was not a violation of the trial court's rules. While we reject Galvin's jurisdictional argument, we do not see it as frivolous.

## Conclusion

The judgment of the United States Court of International Trade is vacated in part, reversed in part, and the case is remanded with instructions to dismiss.

## COSTS

Each party shall bear its own costs.

## VACATED IN PART, REVERSED IN PART, AND REMANDED