**PRECISION SPECIALTY METALS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Mikki Graves Walser, Sanctioned Party–Appellant.**

No. 02–1233.

United States Court of Appeals, Federal Circuit.

Jan. 13, 2003.

Mikki Graves Walser, of Brooklyn, NY, argued pro se as sanctioned party-appellant.

Sheryl L. Floyd, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for amicus curiae Mikki Graves Walser, sanctioned party-appellant. With her on the brief were Robert D. McCallum, Assistant Attorney General; and David M. Cohen, Director.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

In an unpublished opinion, the Court of International Trade formally reprimanded the appellant Mikki Graves Walser, a Department of Justice attorney, for misquoting and failing to quote fully from two judicial opinions in a motion for reconsideration she signed and filed. We hold that we have jurisdiction to review that action, and affirm the reprimand.

I

In the underlying case, Precision Specialty Metals, Inc. ("Precision") contested

the decision of the United States Customs Service denying it drawback (the refund of duties paid on imported products upon their subsequent export, *see* 19 U.S.C. § 1313(b) (2000)). Walser represented the United States in that case. Precision filed a motion for summary judgment. Under the court's scheduling order, the government's response and any cross-motion were required to be filed by May 5, 2000. At 5:51 p.m. on May 4, the government moved for a 30–day extension of time for such filing. Walser stated during a subsequent court hearing that when she filed the extension motion, she had not started preparing the government's cross-motion for summary judgment.

On May 10, the court denied the extension motion and ordered that the government's response to Precision's motion be filed "forthwith." Twelve days later, on May 22, the government filed its opposition to and its cross-motion for summary judgment. Two days later, the court struck from the record as untimely the government's response and granted Precision's motion for summary judgment as unopposed.

The government then filed a motion for reconsideration, which contained the miscitations that resulted in Walser's reprimand. The document listed three names as the submitters, only two of whom signed it: Walser and the Attorney in Charge of the Department of Justice's International Trade Field Office in New York City. (The third name on the motion was that of the Acting Assistant Attorney General.) Walser stated that she "wrote" the motion.

A major argument the government made in support of reconsideration was that it had filed its motion for summary judgment in compliance with the order that it do so "forthwith." The government relied on and quoted the following definition of "forthwith" in BLACK'S LAW DICTIONARY 654 (6th ed.1990):

> Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. *U.S. ex rel. Carter v. Jennings*, D.C. Pa., 333 F.Supp. 1392, 1397. Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. The first opportunity offered.

The motion stated that "[a] review of several court decisions which construed the term 'forthwith' revealed that there is no uniform definition of the term" and that "several courts" have relied on the *Black's Law Dictionary* definition. It stated that "[t]he term is clearly ambiguous and has subjective application." To support this contention, Walser quoted from several judicial opinions.

The following table sets forth in the left column two of the quotations in the motion (one in the text and the other in a footnote), and the right column contains the complete language of the pertinent portion of the opinion:

| *Motion* | *Opinion* |
|---|---|
| See *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708, 710 (1960) (" 'Forthwith' means immediately, without delay, **or as soon as the object may be accomplished by reasonable exertion.**" Emphasis added.) | "Forthwith" means immediately, without delay, or as soon as the object may be accomplished by reasonable exertion. The Supreme Court has said of the word that "in matters of practice and pleading it is usually construed, and sometimes defined by rule of court, as within twenty-four hours." *Dickerman v. Northern Trust Co.*, 1900 176 U.S. 181, 193, 20 S.Ct. 311, 315, 44 L.Ed. 423. *McAllister*, 278 F.2d at 710. |

[9]While we did not review the Supreme Court's decision in *Henderson v. United States*, 517 U.S. 654, 680, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996), in interpreting the meaning of "forthwith," it is noteworthy that in his dissenting opinion, Justice Thomas, with whom The Chief Justice and Justice O'Connor joined, citing *Amella v. United States*, 732 F.2d 711, 713 (C.A.1984), stated that "[a]lthough we have never undertaken to define 'forthwith' . . ., **it is clear that the term 'connotes action which is immediate, without delay, prompt, and with reasonable dispatch.'**" Although we have never undertaken to define "forthwith" as it is used in the SAA, it is clear that the term "connotes action which is immediate, without delay, prompt, and with reasonable dispatch." *Amella v. United States*, 732 F.2d 711, 713 (C.A.9 1984) (citing Black's Law Dictionary 588 (5th ed.1979)). See also *Dickerman v. Northern Trust Co.*, 176 U.S. 181, 192–193, 20 S.Ct. 311, 315, 44 L.Ed. 423 (1900). *Henderson*, 517 U.S. at 680, 116 S.Ct. 1638 (Thomas, J., dissenting).

In *Dickerman*, the Supreme Court stated:

> But "forthwith" is defined by Bouvier as indicating that "as soon as by reasonable exertion, confined to the object, it may be accomplished. This is the import of the term; it varies, of course, with every particular case." In matters of practice and pleading it is usually construed, and sometimes defined by rule of court, as within twenty-four hours.

176 U.S. at 193, 20 S.Ct. 311.

The omissions from the judicial opinions that Walser quoted thus were as follows:

1. She omitted the sentence in *McAllister* that follows the sentence she quoted, referring to and quoting from the Supreme Court's *Dickerman* opinion.

2. The quotation in the footnote from Justice Thomas' dissent left out, after "forthwith," the limiting words "as it is used in the SAA [Suits in Admiralty Act]," thereby making Justice Thomas' statement seem broader than it actually was. She also left out his citation to *Dickerman*. Finally, she failed to state "emphasis added" for the quoted material in bold face, although she had so stated about the bold face portions of the quotation from *McAllister* in the text. This difference would lead a reader to assume that the emphasis in Justice Thomas' dissent was provided by him, not by her.

At the oral argument on the government's motion for reconsideration, the court questioned Walser extensively about the foregoing omissions from the judicial opinions she cited and indicated its concern about her conduct. The court said it would issue an order to show cause to give Walser "an opportunity to discuss" what it "consider[ed] to be an egregious problem."

The court subsequently issued an order to Walser to show cause why she should not be held in contempt "by reason of misrepresentations" in the government's motion for reconsideration. It issued a second order to show cause why she should not be held in contempt "by reason of the specific misrepresentations discussed by the court during oral argument on June 29, 2000," "those misrepresentations including the omission of language in quotations from *Henderson v. United States*, 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) and *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708 (2nd Cir.1960); the failure to cite the court to *Dickerman v. Northern Trust Company*, 176 U.S. 181, 20 S.Ct. 311, 44 L.Ed. 423 (1900), and false implication resulting therefrom that a Justice of the United States Supreme Court had stated the Court had 'never undertaken' to define the term 'forthwith,' that according to that Justice, its definition was limited to the terminology cited by Defendant, and that the Supreme Court had not further defined the term, adversely to Defendant's position, in *Dickerman v. Northern Trust Company*."

At the hearing on the order to show cause, the court first indicated that it believed that "the omissions from *McAllister* and *Henderson* were ... an intentional attempt by competent counsel to mislead the Court" and that it would find that "the representation to the Court was in bad faith, and that as a result it was contemptuous." After a lengthy statement by and colloquy with Walser, however, the court stated that it would not find her "in bad faith" and that she was "purged of the contempt," but that it would take under advisement "whether to find a Rule 11 violation or not."

In an unpublished opinion, the court held that Walser had violated Rule 11 of the Rules of the Court of International Trade, and formally reprimanded her. The court stated:

> As counsel for the United States, Ms[.] Walser signed a brief before this court which omitted directly relevant language from what was represented as precedential authority, which effectively changed the meaning of at least one quotation, and which intentionally or negligently misled the court. That conduct is a direct violation of USCIT Rule 11. Accordingly, a sanction under that Rule is appropriate in this case[.]

In the concluding paragraph of its opinion, the court stated:

> [A]n attorney before this court violated USCIT Rule 11 in signing motion papers which contained omissions/misquotations. Accordingly, the court hereby formally reprimands her.

The court determined not to impose monetary sanctions, because it concluded that the unpublished reprimand would be a sufficient deterrent sanction.

In the present appeal Walser is proceeding pro se. She challenges the Court of International Trade's determination that she violated Rule 11 and reprimanding her

for that conduct. The Department of Justice, which had represented her before the Court of International Trade in responding to the order to show cause, has filed a brief amicus curiae "in support of" her, in which it argues that her conduct did not violate Rule 11 and was not sanctionable.

## II

The first question is whether we have jurisdiction to review the reprimand of Walser by the Court of International Trade. The answer depends upon whether that sanction, imposed as a sentence in the court's unpublished opinion and unaccompanied by any monetary penalty, constituted "a final decision of the United States Court of International Trade," which we may review under 28 U.S.C. § 1295(5) (2000). "This Court has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it." *Sanders Assocs., Inc. v. Summagraphics Corp.*, 2 F.3d 394, 395 (Fed. Cir.1993).

In *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 115 F.3d 962 (Fed. Cir.1997), a district court ruled that a lawyer had violated Federal Rule of Civil Procedure 11 and was given a monetary sanction, but postponed setting its amount. This court "h[e]ld that a district court decision imposing Rule 11 sanctions is not final, and hence not appealable, until the amount of the sanction has been decided by the district court." *Id.* at 964.

This court has not decided whether a trial court's formal reprimand of a lawyer in an unpublished opinion is a reviewable decision. Some of the other circuits, however, have addressed closely related questions.

In *Walker v. City of Mesquite, Tex.*, 129 F.3d 831 (5th Cir.1997), a government lawyer (Peebles), who was no longer assigned to a pending case, appealed the district

court's sanctioning of him for improper litigation tactics. The court of appeals held that it had jurisdiction over the appeal even though the case had not been completed. In rejecting the contention that "there is no Article III case or controversy, and thus no jurisdiction, because the only possible damage is to Peebles' reputation," the court pointed out that the lawyer

> was reprimanded sternly and found guilty of blatant misconduct. That reprimand must be seen as a blot on Peebles' professional record with a potential to limit his advancement in governmental service and impair his entering into otherwise inviting private practice. We therefore conclude and hold that the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct.

*Id.* at 832–33 (footnote omitted).

In *United States v. Talao*, 222 F.3d 1133 (9th Cir.2000), the district court found that in conducting a criminal investigation, an Assistant United States Attorney (Harris) had violated a state ethical rule (Rule 2–100) prohibiting ex parte contacts with parties represented by a lawyer. In holding that it had jurisdiction over the attorney's appeal from that ruling, the court of appeals distinguished cases (discussed below) holding that judicial criticism of a lawyer's conduct was not itself appealable:

> The district court in the present case, however, did more than use "words alone" or render "routine judicial commentary." Rather, the district court made a finding and reached a legal conclusion that Harris knowingly and willfully violated a specific rule of ethical conduct. Such a finding, per se, constitutes a sanction. The district

court's disposition bears a greater resemblance to a reprimand than to a comment merely critical of inappropriate attorney behavior. A reprimand generally carries with it a degree of formality. The requisite formality in this case is apparent from the fact that the trial court found a violation of a particular ethical rule, as opposed to generally expressing its disapproval of a lawyer's behavior. Further, the district court's conclusion that Harris violated Rule 2–100 carries consequences similar to the consequences of a reprimand. If the court's formal finding is permitted to stand, it is likely to stigmatize Harris among her colleagues and potentially could have a serious detrimental effect on her career. In addition, she might be subjected to further disciplinary action by the California Bar. We have no reluctance in concluding that the district court's finding of an ethical violation by Harris is an appealable sanction.

*Id.* at 1138 (footnotes omitted).

See also, *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1199–1200 (9th Cir.1999), "declin[ing] to find, however, that any time a court includes critical words about an attorney's conduct in an order, those words constitute a formal reprimand." *Id.* at 1199. *Weissman* cited with approval and quoted from *In re Williams*, 156 F.3d 86 (1st Cir.1998), *cert. denied*, 525 U.S. 1123, 119 S.Ct. 905, 142 L.Ed.2d 904 (1999). *Id.* at 1199–1200. There the First Circuit held that a bankruptcy court's "published findings of attorney misconduct, originally rendered in support of monetary sanctions, [were not] independently appealable, notwithstanding that the monetary sanctions imposed by the court for that conduct have been nullified." *Williams*, 156 F.3d at 87. It "conclud[ed] that a jurist's derogatory comments about

a lawyer's conduct, without more, do not constitute a sanction." *Id.* at 92. It added, however:

> Sanctions are not limited to monetary imposts. Words alone may suffice if they are expressly identified as a reprimand.

*Id.* (citations omitted). In *Weissman,* the court "agree[d] with the holding of *Williams* that words alone will constitute a sanction only 'if they are expressly identified as a reprimand.'" 179 F.3d at 1200.

The Seventh Circuit, however, appears to have taken a different path. *Clark Equipment Co. v. Lift Parts Manufacturing Co.,* 972 F.2d 817 (7th Cir.1992), involved an appeal by a lawyer from an award of attorney fees by a district court made during a civil suit as sanctions for the lawyer's misconduct. While the appeal was pending, the underlying case was terminated by a judicial decision of one part of it and the parties' settlement of the remaining part. *Id.* at 818. Under the settlement, the parties paid all of the sanctions. *Id.* The court of appeals held that the settlement mooted the lawyers' appeal of the sanctions. *Id.* at 820. It rejected the lawyer's argument that it should also vacate the opinions of the district court, which were highly critical of the lawyer's conduct and which, the lawyer asserted, "harm[ed] his reputation." *Id.* The court stated that it had "already decided that an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects. *Bolte v. Home Ins. Co.,* 744 F.2d 572, 573 (7th Cir.1984) (district court found misconduct, but case settled before sanctions were imposed)." *Id.*

The foregoing decisions of the First, Fifth, and Ninth Circuits have a common theme: a trial court's reprimand of a lawyer is immediately appealable, even though the court has not also imposed monetary or other sanctions upon the lawyer. This principle reflects the seriously adverse effect a judicial reprimand is likely to have upon a lawyer's reputation and status in the community and upon his career. On the other hand, judicial statements that criticize the lawyer, no matter how harshly, that are not accompanied by a sanction or findings, are not directly appealable.

Although the Seventh Circuit stated in *Clark Equipment* that "an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects," 972 F.2d at 820, we can not tell whether that court would apply that principle where the attorney was actually reprimanded for the misconduct. When the Seventh Circuit decided *Clark Equipment* and the earlier *Bolte* case upon which it there relied, it did not have the benefit of the analysis of the subsequent cases from other circuits that we have discussed above.

■ We conclude that we have jurisdiction to review the Court of International Trade's formal reprimand of Walser for attorney misconduct. The reprimand was explicit and formal, imposed as a sanction for what the court determined was violation of the court's "Rule 11 in signing motion papers which contained omissions/misquotations." The reprimand was part of a 16–page opinion that was issued in response to the order to show cause and that was directed only to that issue. The court found, as a basis for the reprimand, that "Walser signed a brief before this court which omitted directly relevant language from what was represented as precedential authority, which effectively changed the meaning of at least one quotation, and which intentionally or negligently misled the court."

As the other circuits have pointed out, a judicial reprimand is likely to have a serious adverse impact upon a lawyer's profes-

sional reputation and career. A lawyer's reputation is one of his most important professional assets. Indeed, such a reprimand may have a more serious adverse impact upon a lawyer than the imposition of a monetary sanction. The trial court's formal reprimand of Walser had a sufficiently direct impact upon her that she should be able immediately to obtain appellate review of that action.

Although the opinion that contained the reprimand was unpublished, that fact should not insulate the trial court's action from judicial review. Unpublished opinions, although not then reprinted in the West Publishing Company reports, may be, and frequently are, reported elsewhere.

Similarly, the lack of a separate order containing the reprimand does not make it unreviewable. The Court of International Trade obviously intended its action to be a formal judicial action—it stated that Walser was "formally" reprimanded—and that action was the completion and end of the procedure that the order to show cause had initiated. The court treated the sentence in its opinion containing the reprimand as its final judgment in the matter, and so do we.

Nothing in this decision should be taken as suggesting, or even intimating, that other kinds of judicial criticisms of lawyers' actions, whether contained in judicial opinions or comments in the courtroom, are also directly reviewable.

## III

The Court of International Trade sanctioned Walser for violations of Rule 11 of that court's rules. That rule provides in pertinent part:

(b) Representation to Court.

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepre-

sented party is certifying that to the best of the person's knowledge, information, and belief, formed after any inquiry reasonable under the circumstances,—

. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

. . .

(c) Sanctions.

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorney . . . that ha[s] violated subdivision (b).

(1) How Initiated

. . .

(B) On Court's Initiative.

On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney . . . to show cause why it has not violated subdivision (b) with respect thereto.

CT. INT'L TRADE R. 11.

"Court of International Trade Rule 11 . . . is identical to Federal Rule of Civil Procedure Rule 11." *A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1246 (Fed. Cir.1991). It was obviously taken from the federal rule, and it therefore is appropriate to look to decisions under the latter in interpreting and applying the identical rule of the Court of International Trade. *See id.* (Unless otherwise indicated, "Rule 11" refers to the Court of International Trade Rule.)

■ As Walser recognizes, this court "appl[ies] an abuse of discretion standard in reviewing all aspects of a ... Rule 11" determination. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). We uphold a Rule 11 sanction unless there is "error underlying" the lower court ruling. *View Eng'g, Inc.,* 208 F.3d at 984. An abuse of discretion occurs if the Rule 11 sanction rests upon "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. 2447.

Walser does not challenge the Court of International Trade's assessment of the evidence. She contends, however, that that court committed two errors of law in concluding that she violated Rule 11.

■ A. Walser first contends that the court did not follow the requirement in Rule 11(c)(1)(B) that to initiate itself a Rule 11 proceeding, the court must issue an order to show cause why "the specific conduct" did not violate the Rule. She points out that the order to show cause issued related only to contempt, not to a Rule 11 violation.

As noted above, the Court of International Trade initially contemplated holding Walser in contempt, and issued an order to show cause why that should not be done. That order described "the specific misrepresentations" upon which it was based, "including the omission of language in quotations from" *Henderson* and *McAllister,* "the failure to cite the court to *Dickerman,*" and the "false implication resulting therefrom." Walser does not contend that this order did not provide adequate notice of the charges she was required to answer. That it did give her such notice is shown by the fact that in response she filed a 27–page document that discussed in detail both the facts and the legal issues.

It was only at the conclusion of the oral argument on the order to show cause that the court indicated that it would not hold her in contempt and would take under advisement whether to find a Rule 11 violation. More than two months later, the court issued its opinion holding that she had violated Rule 11 and formally reprimanding her.

It is unclear what more Walser would have had the court do. Does she contend that when the court actually decided she had violated Rule 11 and that she should be reprimanded, it should have reissued the order to show cause, only this time addressed to Rule 11 and a reprimand instead of to contempt? After it had issued such order, should it have held another oral argument? Walser describes the court's failure to provide explicit notice that it was contemplating a Rule 11 sanction as a "technical violation" and she admits that, based upon the court's statements at the hearing, she was aware that the imposition of sanctions was in the court's mind. Walser had full notice of the basis of the action the court ultimately took, and the court's "technical violation" of the notice requirement of Rule 11 does not warrant setting aside the court's sanction.

B. On the merits, Walser contends her conduct did not violate Rule 11. As noted above, that rule provides in pertinent part that "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after any inquiry reasonable under the circumstances,—... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

Although "the central purpose of Rule 11 is to deter baseless filings in district court," *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. 2447, the scope of the rule is not that limited. As noted, it provides that by presenting legal documents to the court, an attorney is certifying her belief, formed after reasonable inquiry, that the "claims, defenses and other legal contentions therein are warranted by existing law or a non-frivolous argument" to change the law.

The Court of international trade stated that walser

> either willfully or through an unacceptable level of negligence, and the use of selective quotations and direct misquotation, concealed a Supreme Court case of which she was or should have been aware. Counsel's argument that the case was inapposite or dicta is simply irrelevant to this analysis; her misconduct lies not in deciding the case was irrelevant but in attempting to **conceal** it from the court and opposing counsel. That, simply put, is a violation of any attorney's fundamental duty to be candid and scrupulously accurate. (emphasis in original).

The court concluded that Walser violated Rule 11 because she "signed a brief before this court which omitted directly relevant language from what was represented as precedential authority, which effectively changed the meaning of at least one quotation, and which intentionally or negligently misled the court."

We conclude that the Court of International Trade properly described and characterized Walser's actions and properly concluded that those actions violated Rule 11.

■ In the motion for reconsideration, Walser argued that the government's filing of its cross-motion for summary judgment twelve days after it was told to file "forthwith" satisfied that requirement. She began her argument with a quotation from *Black's Law Dictionary's* definition of "forthwith" as including "within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch." She then stated that "the term has been defined by several courts based upon all, or portions of, the definition contained in prior editions of" that dictionary, followed by quotations from two judicial opinions that included the dictionary definition. She also cited in a footnote the dissenting opinion of Justice Thomas in *Henderson*, which stated the various dictionary definitions of the term.

Walser did not cite or mention the 1900 Supreme Court *Dickerman* decision, which stated regarding "forthwith": "In matters of practice and pleading it is usually construed, and sometimes defined by rule of court, as within twenty-four hours." 176 U.S. at 193, 20 S.Ct. 311. The *McAllister* opinion included that quotation, and Justice Thomas' dissent cited *Dickerman*.

In his dissent, Justice Thomas also stated that "[a]lthough we have never undertaken to define 'forthwith' as it is used in the SAA [Suits in Admiralty Act]." *Henderson*, 517 U.S. at 680, 116 S.Ct. 1638 (Thomas, J., dissenting). In her brief Walser eliminated the words "as it is used in the SAA," substituting "..." for that language. This omission, as the Court of International Trade pointed out, "effectively changed the meaning" of Justice Thomas' language, and gave it a broader meaning than it had.

The effect of Walser's editing of this material and ignoring the Supreme Court decision that dealt with the issue—a decision that seriously weakened her argument—was to give the Court of International Trade a misleading impression of the state of the law on the point. She eliminated material that indicated that her delay in filing the motion for reconsideration had not met the court's requirement

that she file "forthwith," and presented the remaining material in a way that overstated the basis for her claim that a "forthwith" filing requirement meant she could take whatever time would be reasonable in the circumstances. This distortion of the law was inconsistent with and violated the standards of Rule 11.

By signing the motion for reconsideration, Walser certified that the "claims, defenses, and other legal contentions therein are warranted by existing law." Inherent in that representation was that she stated therein the "existing law" accurately and correctly. She did not do so, however, because her omissions from and excisions of judicial authority mischaracterized what those courts had stated. The effect of her doctored quotations was to make it appear that the weight of judicial authority was that "forthwith" means "a time reasonable under the circumstances." This was quite different from the Supreme Court's statement in *Dickerman* that "[i]n matters of pleading and practice," forthwith "is usually construed, and sometimes defined by rule of court, as within twenty-four hours." By suppressing any reference to *Dickerman*, which both the Second Circuit in *McAllister* and Justice Thomas in his dissent in *Henderson* cited and which the Second Circuit quoted, Walser gave a false and misleading impression of "existing law" on the meaning of "forthwith."

This court has dealt with lawyers' miscitations in sanctioning lawyers under Federal Rule of Civil Procedure 38 for frivolous appeals. In *Abbs v. Principi*, 237 F.3d 1342 (Fed.Cir.2001), we recently gave these examples of appeals that are "frivolous as argued": "distorting cited authority by omitting language from quotations"; "misrepresenting facts or law to the court"; "failing to reference or discuss controlling precedents." *See id.* at 1345 (citations omitted). In one of the cases there cited, *Porter v. Farmers Supply Ser-*

*vice,* 790 F.2d 882 (Fed.Cir.1986), this court held an appeal frivolous and sanctioned the appellant by requiring payment of costs and attorneys fees because the appellant failed to distinguish relevant authorities and cropped a quote. We noted that the appellant was culpable for "distort[ing] the quote by omitting language devastating to its position on appeal." *Id.* at 887.

Those cases did not involve Rule 11, but Rule 38 dealing with frivolous appeals. They are relevant, however, because they reflect the judicial view of concealment and miscitation of relevant precedent and cropping of quotations to alter their meaning. There is no reason why misconduct condemned under Rule 38 also should not violate Rule 11.

It is no answer to say, as the Department of Justice argues, that because the Supreme Court's statement in *Dickerman* was dictum, Walser was not obligated to refer to it. The Second Circuit and Justice Thomas believed that the statement was sufficiently important to quote it (*McAllister*) and to cite it (*Henderson*). The failure to include the reference to *Dickerman* in both of those citations made Walser's citations themselves misleading. Walser, of course, could have distinguished *Dickerman* as she saw fit or urged the Court of International Trade not to follow it. Consistent with her obligations as an officer of the court, however, she could not simply ignore it by deleting it from the material she quoted.

Other courts of appeals that have considered the application of Rule 11 to attorney-case-citation issues have reached differing results. GEORGENE M. VAIRO, RULE 11 SANCTIONS: CASE LAW PERSPECTIVES AND PREVENTIVE MEASURES § 6.05[d][4] (2d ed.1995). In some of the cases that have rejected sanctions, the attorney's alleged violation was failure to discover precedents

that negated his position. *See, e.g., United States v. Stringfellow,* 911 F.2d 225, 227 (9th Cir.1990). Understandably, courts have been reluctant to punish a lawyer for inadequate or unsound research. That may constitute negligence, but not conduct sanctionable under Rule 11. Similarly, a mere failure to cite contrary authority, without regard to the facts of the particular case, is not necessarily enough to show a violation of Rule 11. *See, e.g., Thompson v. Duke,* 940 F.2d 192, 197–98 (7th Cir. 1991); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1541–42 (9th Cir.1986). As the court stated in so ruling in *Golden Eagle:* "neither Rule 11 nor any other rule imposes a requirement that the lawyer, in addition to advocating the cause of his client, step first into the shoes of opposing counsel to find all potentially contrary authority, and finally into the robes of the judge to decide whether the authority is indeed contrary or whether it is distinguishable. It is not in the nature of our adversary system to require lawyers to demonstrate to the court that they have exhausted every theory, both for and against their client. Nor does that requirement further the interests of the court." 801 F.2d at 1542.

In the present case, however, Walser was sanctioned not for failure to discover pertinent precedents or to cite adverse decisions. She violated Rule 11 because, in quoting from and citing published opinions, she distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them, and failed to show that she and not the court has supplied the emphasis in one of them. We know of no appellate decision holding that Rule 11 does not cover such misstatements of legal authority. *Cf. Teamsters Local No. 579 v. B & M Transit., Inc.,* 882 F.2d 274, 280 (7th Cir.1989) (upholding Rule 11 sanction for "misstating the law"); *Borowski v. DePuy, Inc.,* 850 F.2d 297, 304–05 (7th Cir.1988) (Counsel's "ostrich-

like tactic of pretending that potentially dispositive authority against [his] contention does not exist[ ][is] precisely the type of behavior that would justify imposing Rule 11 sanctions." (internal citation omitted)).

In *Jewelpak Corp. v. United States,* 297 F.3d 1326 (Fed.Cir.2002), this court stated, in a footnote about a lawyer's failure to cite a case that he admitted at oral argument "would doom his appeal":

> [W]e note our significant dismay at counsel's failure to cite *Heraeus–Amersil* as controlling (or at the very least, persuasive) authority in his opening brief. Although counsel subjectively may have believed that another case was more persuasive, officers of our court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand—both good and bad—of which they are aware.

*Id.* at 1333.

Similarly, if the Court of International Trade had followed the Supreme Court's statement in *Dickerman* that "[i]n matters of practice and pleading," "forthwith" "is usually construed ... as twenty-four hours," that case would have "doom[ed]" Walser's contention that her filing after 12 days was "forthwith."

### IV

■ At the end of the oral argument on the order to show cause, the court, after stating that it would take the "Rule 11 sanction" under advisement, stated that whether or not it "enter[ed] an order under Rule 11[ ] under the inherent powers I have as a Judge of the Court," it was requiring that all lawyers appearing before it must "meet" "minimum" "standards." Without regard to whether Walser's misconduct violated Rule 11, the sanction imposed upon her would have been sustainable under the inherent power of the court

to control and specify the standards of lawyers who appear before it. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Such inherent power is not dissipated or changed by the sanctioning scheme in Rule 11. *Id.* at 46–51. The Court of International Trade therefore could have imposed the same sanction on Walser under its inherent power as it did under Rule 11. *See id.* at 49, 111 S.Ct. 2123 ("the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct").

### V

The ultimate responsibility for the completeness and accuracy of papers that are filed by Department of Justice lawyers rests with the Department itself. We find it troubling that the Department's Amicus Brief seeks to defend Walser's actions on the grounds that the Supreme Court decision in *Dickerman* was not controlling authority; that the motion supposedly did not misrepresent the law; that "the issue of whether or not the Supreme Court had addressed the meaning of 'forthwith' is not important;" and that the court was not misled. (*Amicus Curiae* Br. at 12, 13, 18, 19). While the court did not err in formally reprimanding Walser, that reprimand should not be seen as in any way detracting from the Department's own responsibility to establish high standards for its lawyers and to provide adequate training and supervision, so that episodes such as this are not repeated.

### CONCLUSION

The Court of International Trade's reprimand of Walser under Rule 11 is

*AFFIRMED.*