**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

KATHERINE L. MELOT,

        Defendant-Appellant,

and

BILLY R. MELOT; C.D. EXPRESS,
INC.; MIRROR FARMS, INC.; LEIGH
CORPORATION; KLM TRUST;
SUZANNE CORPORATION; MELM
TRUST,

        Defendants.

_____

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

BILLY R. MELOT,

        Defendant-Appellant,

and

KATHERINE L. MELOT; C.D.
EXPRESS, INC.; MIRROR FARMS,

No. 13-2201

No. 13-2202

INC.; LEIGH CORPORATION; KLM
TRUST; SUZANNE CORPORATION;
MELM TRUST; C.D. PROPERTIES,
INC.; Q.F. MARKETING, INC.,

        Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:09-CV-00752-JCH-WPL)**

---

Katherine L. Melot and Billy R. Melot, Pro Se, Defendants-Appellants.

Kathryn Keneally, Assistant Attorney General, Thomas J. Clark and Anthony T. Sheehan, Attorneys, Tax Division, Steven Yarbrough, Acting United States Attorney, Department of Justice, Washington, D.C. for Plaintiff-Appellee.

---

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

The district court sanctioned Mrs. Katherine L. Melot and Mr. Billy R. Melot based on the court's inherent authority. The Melots appeal and seek leave to proceed in forma pauperis. We grant leave to proceed in forma pauperis and address the merits of the appeal.

This appeal requires examination of the Fifth Amendment's Due Process Clause, which requires notice and an opportunity to be heard. In light of these requirements, a court considering sanctions must give the sanctioned party notice and an opportunity to be heard. Here, the court supplied notice that it was considering

contempt, but not sanctions. Thus, the Melots never had notice of sanctions or an opportunity to argue against the district court's use of its inherent authority to order sanctions. The lack of notice and an opportunity to be heard led to a denial of due process. Thus, we reverse the sanctions order.[1]

## I.     Suspicion of Fraud and the Imposition of Sanctions

Mr. and Mrs. Melot owe millions of dollars in federal taxes, and Mr. Billy Melot is serving time in federal prison for tax crimes. The debt led the United States to foreclose on the Melots' real properties, and the Melots tried to stop the foreclosure. The sanctions were imposed because of the methods used by the Melots. The district court regarded them as fraudulent.

The disagreement began when the district court reduced the tax assessments to judgments and ordered the sale of the Melots' real properties. That order prompted a motion to intervene by Mr. Steven M. Byers, who filed documents asserting liens on the property. These documents supplied an address in New Mexico and were mailed from the city where the Melots' properties were located (Hobbs, New Mexico).

The government suspected fraud and collaboration with the Melots, pointing out to the court that: (1) Mr. Byers lived in prison—not Hobbs, New Mexico, (2) he could not own any liens because he was destitute, (3) the Melots had never disclosed any liens, (4) Mrs. Melot had signed Mr. Byers' name on the lien and motion to

---

[1]     We conclude that oral argument will not provide material assistance in deciding the appeal. Thus, we have decided the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2).

- 3 -

intervene, and (5) the New Mexico address listed for Mr. Byers was actually the home of Mrs. Melot's friends.

The magistrate judge held a hearing on the motion to intervene. Mrs. Melot attended with counsel, and Mr. Byers participated by telephone. Mr. Melot declined the opportunity to participate by telephone.

At the hearing, Mr. Byers moved to withdraw his motion for lack of proof. Nevertheless, the government asked to continue with the hearing because of the potential fraud on the court. The court denied the motion to withdraw, and the government presented evidence tending to show that the Melots and Mr. Byers had created a scheme to derail the foreclosure. Mrs. Melot refused to answer questions, invoking the Fifth Amendment privilege against self-incrimination.

At the end of the hearing, government counsel proposed filing restrictions and an order for reimbursement of the government's costs related to the hearing. Mrs. Melot's counsel stated: "[I]f sanctions are on the table, I believe a Rule 11 sanction, I would just like notice and opportunity to be heard on those." ECF No. 256 at 85.[2] Before the court adjourned, counsel again stated: "I assume that if the Court is going to consider sanctions, that we'll just get notice of that?" *Id.* at 87. The magistrate judge responded: "Well, we'll see how it works. I mean, I could

---

[2]     We will identify the district court filings by referring to the court's numbering in its electronic case filing system.

- 4 -

make a recommendation to the district judge, which, of course, would be noticed to you, and then the hearing would be before the district judge." *Id.*

The magistrate judge certified criminal contempt by the Melots. In certifying the contempt, the magistrate judge noted that the district court would hold a hearing and decide whether to hold the Melots in contempt. The certifications then set forth the facts constituting contempt: Mrs. Melot "assisted Steven M. Byers in an effort to mislead the Court about Mr. Byers' identity and incarcerated status in an effort to delay the administration of justice" and "actively and intentionally participated in a scheme to fraudulently create a third party interest in her properties with the intention of defrauding the Court, sabotaging the orderly administration of justice and delaying the United States' lawful efforts to recover the judgment as issued by the Court." ECF No. 245 at 5-6. And according to the magistrate judge, Mr. Melot participated in the scheme. ECF No. 246 at 4.

More than a year later, the district court issued an order addressing the contempt certifications. Recognizing the costs of prosecuting a criminal contempt matter and the shortfalls in the court's budget, the district court declined to order contempt. Instead, the court imposed sanctions consisting of: (1) removal of Mrs. Melot and her children from the property, (2) reimbursement of the government's costs for the hearing, (3) striking of the Melots' pending motions, responses to motions, and requests for stays, and (4) imposition of filing restrictions.

**II.     The Lack of Notice and an Opportunity to be Heard**

The Melots argue that the district court violated the Fifth Amendment's Due Process Clause by imposing sanctions without notice and an opportunity to be heard. We agree.

Sanctions cannot be assessed without the "basic requirements of due process," which are "notice that such sanctions are being considered by the court and a subsequent opportunity to respond." *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987) (en banc); *see also United States ex rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 857 (10th Cir. 2005) ("Due process requires us to give Appellants notice that we are contemplating imposing sanctions and an opportunity to respond."). The notice must include not only the "conduct alleged to be sanctionable," but also "the standard by which that conduct [would] be assessed." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997). The Melots had no notice of possible sanctions until they had already been imposed.

The magistrate judge provided notice that: (1) he would consider a motion to intervene by Mr. Byers, and (2) the district judge would consider whether to find criminal contempt. In supplying notice of these matters, the magistrate judge expressed serious concerns about possible fraud on the court. But the magistrate judge never said that the district court would consider sanctions under the court's inherent authority. And when the subject of sanctions arose, the discussion lacked any specifics. With little to go on, Mrs. Melot's counsel surmised that the court

might have intended to invoke Federal Rule of Civil Procedure 11 rather than the court's inherent power.

The magistrate judge certified criminal contempt for Mr. and Mrs. Melot, so the Melots knew that contempt was a possibility. Ultimately, however, the district court did not follow the contempt procedure. Instead, the court used its inherent authority to impose sanctions.

Until then, there had been no notice of any potential for sanctions under the court's inherent authority. Though the Melots knew they could be cited for contempt, they weren't. And "the pursuit of sanctions under one . . . provision[] does not constitute notice for purposes of the other" where, as here, the provisions differ "in standards, procedure, and punitive scope." *Hutchinson v. Pfeil*, 208 F.3d 1180, 1185 (10th Cir. 2000); *see also Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129 (2nd Cir. 1998) ("[T]here are significant differences between the imposition of sanctions and the punishment of criminal contempt.").

The Melots not only lacked notice regarding sanctions, but also lacked an opportunity to be heard. The hearing did not supply this opportunity because the issue of sanctions did not arise until the hearing on a motion to intervene, and no one discussed the possibility of sanctions under the court's inherent authority. *See Sakon v. Andreo*, 119 F.3d 109, 114 (2nd Cir. 1997) (no notice of sanctions when the only pending matters involved motions to dismiss and to set aside an order striking the complaint). After issuing the contempt certifications, the magistrate judge never set

a briefing schedule or mentioned the possibility of sanctions. That subject was not broached until the district judge imposed sanctions in a written order.

Accordingly, we reverse, vacating the sanctions and remanding for further proceedings.[3] The district court is free to consider re-imposing sanctions. But if the court re-imposes sanctions, it must provide the Melots with notice and an opportunity to be heard (under whatever source of authority the court invokes).

## III.    In Forma Pauperis

Mr. and Mrs. Melot have filed motions for leave to proceed in forma pauperis. These motions are granted.

---

[3]    One sanction was an order for Mrs. Melot to remove herself and her family from the real property that was subject to sale. In related appeals (Nos. 13-2225 & 13-2226), the United States has informed the court that the sale has closed. Given that the Melots no longer have an ownership interest in the property, the vacatur of the sanctions order should not be construed as authorizing Mrs. Melot or her family to return to the property.