NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**LEVEL 3 COMMUNICATIONS, LLC,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

**VERIZON DEUTSCHLAND GMBH,**
*Defendant*

**ROBERT C. BIGLER,**
*Sanctioned Party-Appellant*

———————————

2017-1924, 2017-2068

———————————

Appeals from the United States Court of Federal Claims in No. 1:16-cv-00829-SGB, Chief Judge Susan G. Braden.

———————————

Decided: January 30, 2018

———————————

WILLIAM ERNEST HAVEMANN, Civil Division, Appellate Staff, United States Department of Justice, Washington, DC, argued for defendant-appellant and sanctioned party-

appellant.  Also represented by CHAD A. READLER, SCOTT R. MCINTOSH.

———————————

Before PROST, *Chief Judge,* SCHALL, and TARANTO, *Circuit Judges.*

SCHALL, *Circuit Judge.*

## DECISION

Defendant the United States ("the government") and Department of Justice attorney Robert C. Bigler appeal the March 16, 2017 order of the United States Court of Federal Claims.  In that order, the court, relying on its inherent authority, sanctioned the government and Mr. Bigler for violating their duty of candor to the court.  *See Level 3 Commc'ns, LLC v. United States*, 131 Fed. Cl. 73 (2017) ("*Sanctions Order*").  We *reverse.*

## DISCUSSION

### I.

On August 28, 2015, the Defense Information Systems Agency ("DISA"), an agency within the Department of Defense, issued Solicitation HC1021–15–T–3033 ("the Solicitation").  Under the Solicitation, DISA sought to lease access to an upgraded telecommunications circuit between Germany and Kuwait for use by the military for an indefinite term.  *Sanctions Order*, 131 Fed. Cl. at 75.  Although the Solicitation is not part of the record before us, it is undisputed that it required bidders to deliver a completed circuit to DISA prior to the beginning of the lease term.  Performance under the contract thus involved two phases: (1) a period specified by the bidder prior to the lease term—known as "lead time"—during which the successful bidder would develop the circuit ("Phase 1"); and (2) the lease term itself ("Phase 2"), which was expected to last 60 months.  At the time the Solicitation was

issued, Level 3 Communications, LLC ("Level 3") was the incumbent contractor.

On March 8, 2016, DISA awarded the contract to Verizon Deutschland GmbH ("Verizon"). *Sanctions Order*, 131 Fed. Cl. at 75. After Level 3 filed an administrative protest with the Government Accountability Office ("GAO") on March 14, the contracting officer issued a stop-work order requiring Verizon not to perform under the contract while GAO resolved the dispute. On June 21, GAO denied Level 3's protest. *In re Level 3 Commc'ns LLC*, B-412854, 2016 WL 3568223, at *7 (Comp. Gen June 21, 2016). Following the GAO decision, the contracting officer lifted the stop-work order on June 29. *Id.* Shortly thereafter, Verizon began developing its circuit, as contemplated by Phase 1 of the contract. In its bid, Verizon had stated that it would require a 150-day lead time to prepare a completed circuit and deliver it to DISA. Due to the three-month delay that resulted from the contracting officer's stop-work order, Verizon's 150-day lead time contemplated having the circuit ready for delivery on December 1, 2016.

Level 3 filed a complaint in the Court of Federal Claims on July 12, 2016, in which it challenged the award of the contract to Verizon. *Sanctions Order*, 131 Fed. Cl. at 75. That same day, it moved for a preliminary injunction, and one day later it sought a temporary restraining order. *Id.* In its filings, Level 3 asked the court to "enjoin [DISA] from continuing performance of the Verizon contract award," App. 70, and it stated that preliminary relief was needed because DISA "was moving forward with performance of the [c]ontract by Verizon," App. 72.

At a telephone status conference on August 1, the court inquired about the status of contract performance. Mr. Bigler, counsel for the government, advised the court that, after the issuance of the GAO decision on June 21, the contracting officer had lifted the stop-work order

around June 28 and that Verizon had begun its preparations to set up the circuit for DISA. App. 194. Through discussion with the court, counsel for Level 3 and Mr. Bigler explained that Verizon was currently working on Phase 1 of the contract, for which it would be paid a fee, so that it would be able to start Phase 2, contract performance, on December 1. App. 202–06. It also was explained to the court that, if it ultimately ruled in favor of Level 3 and Level 3 thereafter were awarded the contract, "a period of 60 months service would be anticipated." App. 204. Based upon what had been said at the status conference, the court decided not to issue a temporary restraining order and instead ordered merits briefing on an expedited schedule. App. 218.

Thereafter, Level 3 and the government cross-moved for judgment on the administrative record. On August 23, 2016, the government filed its opposition to Level 3's motion and its own cross-motion. Pertinent to the matter now before us, in its August 23 filing, the government, through Mr. Bigler, stated: "[A]s a result of Level 3's unsuccessful GAO protest, Verizon's new circuit will not be operational until December 1, 2016." App. 122.

On September 15, 2016, the court convened oral argument on the parties' cross-motions for judgment on the administrative record. *Sanctions Order*, 131 Fed. Cl. at 75. In the course of the proceedings, the court asked government counsel about the status of Verizon's performance under the contract. Mr. Bigler responded that Verizon was "preparing to perform" and explained that this involved setting up the circuit and testing it to make sure that it worked. App. 259–60. In response to a further question from the court, Mr. Bigler stated that Verizon would be ready on December 1 to provide the "larger circuit" than the one DISA currently was leasing. App. 261.

On November 9, 2016, the court, through an email from its law clerk, asked the parties whether Verizon still intended to commence performance on December 1. Responding on behalf of the government, Mr. Bigler informed the court that Verizon had completed the circuit earlier than expected, that the government had accepted the circuit, and that the government had begun using the circuit on November 1. *Sanctions Order*, 131 Fed. Cl. at 76–77. Thus, Phase 2 of the contract commenced a month ahead of schedule.

The court convened a hearing on November 14, 2016. After referring to what had transpired at the September 15 hearing, the court addressed Mr. Bigler, stating, "It was the Court's impression that what I allowed you to do until the decision [on the parties' cross-motions] was to get out was to basically get—hire subcontractors to get ready to perform on December 1st. It appears that the government went on ahead and performed in any event." App. 286. Saying it felt that the government had misinformed it, the court stated, "I am going to recommend sanctions, Rule 11 sanctions against the [g]overnment . . . ." App. 287. Following the hearing, the court issued an order temporarily restraining DISA from allowing Verizon to continue performance under the contract. App. 23.

On December 5, 2016, the court issued an order sustaining Level 3's bid protest and enjoining DISA from allowing Verizon to continue to perform under the contract.[1] At the conclusion of its order, the court ordered the government "to show cause why the [g]overnment's written and oral representations to the court that perfor-

---

[1]    In due course, DISA solicited revised bids from all the offerors who had bid on the original contract. On June 16, 2017, Verizon was again awarded the contract. Corrected Appellants Br. 14 n.3.

mance of the contract with Verizon would not commence until December 1, 2016 does not violate RCFC 11(b)." App. 51.[2] We understand the words "written and oral representations to the court" to have been references by the court to the statement quoted above from the government's August 23 filing and to the statements made by Mr. Bigler on August 1 and September 15, all to the effect that Phase 2 contract performance would not commence until December 1, 2016.

On March 16, 2017, the court issued the *Sanctions Order*. Although the court declined to sanction either the government or Mr. Bigler under RCFC 11(b), relying on its inherent authority, it ruled that the government and Mr. Bigler had violated their duty of candor to the court. *Sanctions Order*, 131 Fed. Cl. at 85. The duty of candor is embodied in the Model Rules of Professional Conduct, Rule 3.3 ("Candor Toward the Tribunal"). Rule 3.3(a)(1) provides that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" The court found that this rule had been violated because the government had misrepresented to the court that contract performance would not begin until December 1, 2016, when in fact it commenced on November 1, 2016. *Sanctions Order,* 131 Fed. Cl. at 83. This "misrepresentation was exacerbated," the court wrote, "by the [g]overnment's failure to inform the court—at least on November 1, 2016—that Verizon completed work on the circuit and turned it over to DISA." *Id.* At the conclusion of its order, the court identified Mr. Bigler by name, suggested that he was responsible for the ethical breach, and stated that Mr. Bigler's Department of Justice supervisor was author-

---

[2]    Court of Federal Claims Rule 11 tracks Rule 11 of the Federal Rules of Civil Procedure.

ized to determine whether any further sanction against Mr. Bigler was warranted. *Id.* at 85.

As noted, both the government and Mr. Bigler appeal the *Sanctions Order*. We have jurisdiction because the order represents a formal reprimand of Mr. Bigler for attorney misconduct. *See Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1352–53 (Fed. Cir. 2003).[3]

## II.

We review an order imposing sanctions under the abuse of discretion standard. *1-10 Indus. Assocs., LLC v. United States*, 528 F.3d 859, 867 (Fed. Cir. 2008) (citing *Precision Specialty Metals*, 315 F.3d at 1354). A court abuses its discretion if the order imposing sanctions is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Precision Specialty Metals*, 315 F.3d at 1354 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Federal courts possess certain "inherent power," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). The Supreme Court has emphasized, however, that a court's inherent powers "must be exercised with restraint and discretion." *Id.* at 44. Indeed, "[w]ithout a finding of fraud or bad faith whereby the 'very temple of justice has been defiled,' a court enjoys no discretion to employ inherent powers to impose sanctions." *Amsted Indus., Inc. v. Buckeye Steel Castings, Co.*, 23 F.3d 374,

---

[3]   Verizon and Level 3 have chosen not to participate in the appeal. Corrected Appellants Br. 14.

378 (Fed. Cir. 1994) (citing *Chambers*, 501 U.S. at 50–51; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)) (internal quotation marks omitted). Finally, before being sanctioned, an attorney "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and opportunity to be heard on [the] matter." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997); s*ee also United States v. Melot*, 768 F.3d 1082, 1085 (10th Cir. 2014); *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004).

## III.

On appeal, the government contends, on behalf of itself and Mr. Bigler, that the Court of Federal Claims abused its discretion in using its inherent authority to impose sanctions. The government argues that this is so because the court did not make the required finding of fraud or bad faith against either the government or Mr. Bigler and because, in any event, there is no support in the record for such a finding. The government also argues that the court deprived both it and Mr. Bigler of due process because the order to show cause stated that the court was contemplating Rule 11 sanctions, but did not mention the possible use of its inherent authority, and did not mention that the imposition of sanctions was contemplated against Mr. Bigler individually. *See* Corrected Appellants Br. 14–16. For the following reasons, we hold that the record in this case does not support the imposition of sanctions. The Court of Federal Claims therefore erred in sanctioning the government and Mr. Bigler. In

view of our disposition of the case, it is not necessary for us to address the government's due process argument.

Central to the issue before us are the telephone status conference held on August 1, 2016, the government's filing of August 23, 2016, and the hearing convened on September 15, 2016. As seen, on August 1, the parties explained to the court that Verizon was working on Phase 1 of the contract, doing what it had to do in order to be able to begin performance of Phase 2 on December 1, 2016. Thereafter, in its August 23 filing, the government represented that Verizon's circuit would not be operational until December 1. And subsequently, at the September 15 hearing, the focus of the court's discussion with Mr. Bigler was on the question of what Verizon had been doing since August 1. Mr. Bigler informed the court that Verizon was "preparing to perform," by which he meant that Verizon was in the process of setting up the circuit and testing it to make sure that it worked, so that Phase 2 contract performance could begin on December 1.

Thereafter, upon learning that Verizon had in fact completed its Phase 1 work early and had commenced Phase 2 performance on November 1 without notice from the government to the court or Level 3, the court, on November 14, expressed its displeasure with the government and Mr. Bigler. It stated that it had been the court's "impression" at the conclusion of the proceedings on September 15 that all that would happen until the court decided the cross-motions was Verizon's continuing Phase 1 work. The court stated at the November 14 proceedings that, under these circumstances, it believed that it had been misled by the government and Mr. Bigler. The order to show cause followed. As seen, the focus of the order to show cause was upon "the [g]overnment's written and oral representations that performance of the contract with Verizon would not commence until December 1." App. 51.

The concern expressed by the court on November 14 is understandable. The government should have informed Level 3 and the court that Verizon had completed the Phase 1 work early and that Phase 2 performance was about to begin. Nevertheless, we do not believe that the record reveals a sufficient basis for finding "the conscious doing of wrong because of dishonest purpose or moral obliquity" that is required in order to support the imposition of sanctions under the court's inherent authority.

We say this for several reasons. As to Phase 1 work, Mr. Bigler, as well as Level 3 itself, expressly indicated, correctly, that "performance" of that part of the contract was in fact under way. As to Phase 2, Mr. Bigler did make a representation—that Phase 2 would not begin before December 1—that turned out in retrospect to be incorrect. But nothing in the record suggests that, when Mr. Bigler made the statements he did on August 1, August 23, and September 15, he believed they were not correct or he was attempting to deceive the court. And there is no basis in the several colloquies with the court, which were not entirely clear as to exactly what contract "performance" was being discussed in particular passages, for finding any clear agreement by the parties and the court as to what was to happen if the time came for a transition from Phase 1 to Phase 2. Moreover, the August 1 colloquy indicated agreement by the government and Level 3 that, even if Phase 2 were to begin, Level 3 would still anticipate a full 60 month service period were it to win the bid protest and then be awarded the contract in place of Verizon. In short, based upon the record before us, we are unable to conclude that the government, through Mr. Bigler, could be found to have knowingly and intentionally made misrepresentations to the court as to when Phase 2 contract performance would start or to have acted with a dishonest purpose or other bad faith in failing to update the information on November 1.

CONCLUSION

For the foregoing reasons, the *Sanctions Order* is reversed.

**REVERSED**

COSTS

No costs.